UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PEOPLE'S WORKSHOP, INC., ET AL.

CV. NO. 17-107-JWD-RLB

VERSUS

JUDGE JOHN W. deGRAVELLES

FEDERAL EMERGENCY
MANAGEMENT AGENCY, ET AL.

## RULING AND ORDER

### I. INTRODUCTION

This case is before the Court on two Motions to Dismiss. The first Motion to Dismiss was filed by the Federal Emergency Management Agency ("FEMA") and John F. Kelly, the Secretary of the Department of Homeland Security ("DHS"). (Doc. 13). Plaintiffs People's Workshop, Inc., and the individually named Plaintiffs oppose this Motion. (Doc. 20).

The second Motion to Dismiss was filed by FEMA and DHS as an entity. (Doc. 58). Plaintiffs oppose this Motion, (Doc. 63), and FEMA and DHS have replied in further support of it, (Doc. 64).

For the reasons discussed below, Defendants' Motions are granted, and Plaintiffs' claims against them are dismissed. Dismissal is with leave to amend and an extension of time to perfect service.

### II. PLAINTIFFS' ALLEGATIONS

In August 2016, the town of Clinton, Louisiana, which is located in East Feliciana Parish, was devastated by historic flooding. (Doc. 1 at 2). As a result, President Obama declared a state of emergency in Louisiana. (*Id.* at 6). According to Plaintiffs, under the Stafford Act (the "Act"), victims of a disaster who are displaced from their homes are eligible for housing assistance from

1

FEMA in one of two forms, either financial or "direct" (*i.e.*, in the form of an actual unit of temporary housing). (*Id.* at 5 (citing 42 U.S.C. § 5174)). Plaintiffs argue that the Act requires FEMA to provide this relief to eligible persons on a non-discriminatory basis. (*Id*. at 14).

Despite their alleged statutory right to assistance, Plaintiffs argue that many victims, themselves included, have requested housing assistance but have not received it, have unlawfully been denied it, have not been properly notified of both the scope and conditions of available assistance, or have been relocated to other parishes despite the presence of available land in Clinton. (*Id.* at 7-9). Plaintiffs also contend that People's Workshop met with local FEMA representatives after acquiring land that could have been used as a trailer park in Clinton, but that the representatives "became irate, belligerent, and prejudiced towards the notion of the flood victims having a group trailer site in their own community." (*Id.* at 6-7). Plaintiffs appear to contend that this occurred after the local FEMA representatives learned that the flood victims are African Americans. (*Id.* at 24). Some representatives from FEMA have also allegedly failed to properly assess flooding damage to Plaintiffs' property. (*Id*. at 8).

Plaintiffs filed this suit seeking declaratory and injunctive relief requiring FEMA to, *inter alia*, provide all eligible applicants with temporary housing assistance within a reasonable period of time and to prevent Defendants from establishing a "trailer group site" outside of Clinton. (*Id.* at 25). As grounds for this relief, Plaintiffs allege that the Defendants have violated provisions of the Stafford Act and the Due Process Clause of the U.S. Constitution. (*Id.* at 18-24).

## III. DISCUSSION

### A. General Standards

The instant Motions seek relief under Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6). The Court addresses each standard in turn.

#### 1. Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

> Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).
>
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

#### 2. Rule 12(b)(2)

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court

bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

Proper service of process is an essential part of the procedure for establishing and proving personal jurisdiction. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1347 (5th Cir. 1992); *see also Delta S.S. Lines, Inc. v. Albano,* 768 F.2d 728 (5th Cir. 1985). In the absence of valid service of process, proceedings against a party are void. *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.,* 635 F.2d 434, 435 (5th Cir. 1981).

### 3. Rule 12(b)(5)

Federal Rule of Civil Procedure ("Rule") 12(b)(5) allows a party to move to dismiss for insufficient service of process. The party making service has the burden of demonstrating its validity when an objection to service is made. *Holly v. Metro. Transit Authority*, 213 F. App'x 343 (5th Cir. 2007) (citing *Carimi*, 959 F.2d at 1346). The district court has broad discretion in determining whether to dismiss an action for ineffective service of process. *George v. U.S. Dept. of Labor, Occupational Safety & Health Admin.,* 788 F.2d 1115, 1116 (5th Cir. 1986).

### 4. Rule 12(b)(6)

In *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014), the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed

5

> or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10–00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff states a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

### B. The Parties' Arguments

#### 1. The First Motion to Dismiss

In the first Motion to Dismiss, FEMA and Kelly move to dismiss this action for insufficient service of process and lack of personal jurisdiction under Rules 12(b)(5) and 12(b)(2). (Doc. 13 at 1). They contend that, because this action was filed on February 24, 2017, the deadline for service was May 25, 2017. (Doc. 13-1 at 1). Because Plaintiffs sued a federal agency and its head,

they were required to deliver a copy of the summons and complaint to the head of the agency and the official sued in his individual capacity, as well as the United States Attorney and the Attorney General of the United States. (*Id.*). As of the date of this Motion, FEMA and Kelly contend that only the Acting United States Attorney was properly served. (*Id.*). As a result, FEMA and Kelly contend that service is improper and that the Court lacks personal jurisdiction. (*Id.* at 2-4). They also argue that Plaintiffs cannot show "good cause" for their failure to timely effect service. (*Id.* at 4).

In their July 17, 2017 Opposition, Plaintiffs acknowledge that "[t]he following remains to be done: mail a copy of the summons and the [C]omplaint to FEMA, DHS, the director of DHS and the United States Attorney by certified or registered mail." (Doc. 20 at 2). Plaintiffs contend that they are entitled to an extension of time to effect service on Kelly because the United States Attorney was timely served, and they request an extension of time to effect service on the other Defendants based on Plaintiffs' counsel's good faith efforts and the lack of prejudice to Defendants. (*Id.*).

### 2. The Second Motion to Dismiss

In the second Motion to Dismiss, FEMA and DHS move to dismiss this action for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted under Rules 12(b)(1) and 12(b)(6). (Doc. 58). They argue that the Stafford Act provides no private right of action in the first instance and, even if it did, it also contains a provision foreclosing claims related to "discretionary function[s]" like those at issue in this case. (Doc. 58-1 at 7-12). They also contend that Plaintiffs' claims under the Due Process Clause cannot proceed absent a property interest in relief, and the Stafford Act gives rise to no such interest as it (and its associated regulations) place no "substantive limitations on official discretion." (*Id.* at 13-14). Finally,

7

FEMA and DHS argue that, even if the Stafford Act provided a private cause of action, Plaintiffs' claims concerning alleged violations of its non-discrimination provisions are conclusory. (*Id.* at 14-15).

In opposition, Plaintiffs first argue that the Stafford Act implies a private right of action because it was enacted for the benefit of people like Plaintiffs, "Defendants have cited no evidence that the statute was meant to deny a private remedy," implying a right of action is consistent with the legislative scheme under which FEMA operates, and this is not a field "traditionally relegated" to state law. (Doc. 63-2 at 2-3). Next, Plaintiffs argue that, because they seek injunctive and declaratory relief, their action is not barred by sovereign immunity. (*Id.* at 4). Plaintiffs appear to acknowledge that, under some circumstances, a court "may not make the government act or refrain from actin," but they argue that "there is an exception to this doctrine for acts ultra vires of FEMA's authority." (*Id.* at 4-5). Plaintiffs also contend that, under Fifth Circuit law, a property interest may arise from "rules or understandings" created by an agency's policies or practices, even absent mandatory statutory or regulatory language. (*Id.* at 5-6). Finally, Plaintiffs request leave to amend if the Court finds that Plaintiffs have failed to state a viable claim. (*Id.* at 6).

In reply, FEMA and DHS generally reiterate arguments previously made. (*See* Doc. 64 at 2-4). They also observe that the Complaint fails to set forth either a "statutory limitation" on FEMA's authority that could permit the ultra vires doctrine to apply or any "policies or practices" that "make the award of a mobile home unit or 'FEMA trailer' mandatory." (*Id.* at 3).

### C. Analysis

#### 1. Subject Matter Jurisdiction

Central to the parties' disputes concerning subject matter jurisdiction are several interpretative questions about the Stafford Act, including its effect on sovereign immunity, the

8

availability of a private right of action under it, and the scope of its provisions immunizing discretionary functions from review.

A definitive case in this area is *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307 (5th Cir. 2009). *Davis* considered whether the Stafford Act's discretionary function exception barred a suit based on the federal government's decision not to approve funding for debris removal in the aftermath of Hurricane Katrina. *Id.* at 310. The district court had dismissed Plaintiff's claims pursuant to the Federal Tort Claims Act ("FTCA") and Administrative Procedure Act ("APA") for lack of subject matter jurisdiction after concluding that "the United States has not waived sovereign immunity for its agencies' discretionary funding decisions," and the Fifth Circuit affirmed. *Id.* The Fifth Circuit analyzed the issue as follows:

> We are asked to determine whether the United States has waived sovereign immunity for its agencies' decision not to fund the Parish's requested debris removal. Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity. At the pleading stage, plaintiff must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception.
>
> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. Because sovereign immunity is jurisdictional in nature, Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied[.][[1]]
>
> Although the Stafford Act does not contain a waiver of sovereign immunity, it does contain a discretionary function exception to governmental liability nearly identical to the one contained in the FTCA. *See* 42 U.S.C. § 5148. The Stafford Act's discretionary function exception provides that the United States will not be liable for:
>
>> [A]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

---

[1] Here, this Court omits a discussion of specific provisions of the FTCA and APA, which Plaintiffs have not alleged apply in this action.

9

> *Id.* The Stafford Act's discretionary function exception exists, despite the lack of an express waiver of sovereign immunity, to protect the government from liability for claims based on its discretionary conduct brought pursuant to the FTCA, [Administrative Procedure Act ("APA")], or other statutes of general applicability. Nonetheless, this provision precludes judicial review of all disaster relief claims based upon the discretionary actions of federal employees.

*Id.* at 315-18 (some citations, quotation marks, and footnotes omitted). The Fifth Circuit continued on to decide that the Stafford Act's discretionary function exception should be interpreted in the same way as a similarly worded provision of the FTCA. *Id.* at 323. Applying FTCA case law, the Fifth Circuit ruled that FEMA's decision not to approve funding for debris removal was discretionary. *Id.* First, the Fifth Circuit observed that the decision was "a matter of choice for the acting employee," as the exception covered actions "leav[ing] it to a federal agency to determine when and how to take action" and not binding the agency to act "in a particular manner." *Id.* Second, the Fifth Circuit concluded that the decision was one "based on considerations of public policy." *Id.* at 324.

In this case, the Court agrees with FEMA and DHS with respect to subject matter jurisdiction under the Stafford Act. First, it does not appear that the Stafford Act, standing alone, provides for a private right of action. Plaintiffs do not argue that the Stafford Act includes an express private right of action, (Doc. 63-2 at 2), nor can the Court discern one. With respect to the presence of an implied right of action, the Supreme Court was at one time willing to liberally recognize implied causes of action, but the Court has since adopted a "far more cautious course," clarifying that, when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar v. Abassi*, __ U.S. __, 137 S. Ct. 1843, 1855-56 (2017) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). In other words, "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander*, 532 U.S. at 286.

10

The Fifth Circuit addressed this issue in *Delancey v. City of Austin*, stating that "'for Congress to create new rights enforceable under an implied private right of action' it must do so in 'clear and unambiguous terms.'" 570 F.3d 590, 593 (5th Cir. 2009) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285–86 (2002)). *Delancey* further explained that, "in *Gonzaga* the Court set forth factors that indicate Congressional intent to create individual rights enforceable through private rights of action, explaining that 'for a statute to create such private rights, its text must be phrased in terms of the persons benefitted.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 284). Additionally, the Supreme Court has noted that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

Plaintiffs have not directed the Court to any rights-creating language in the Stafford Act, and, contrary to their apparent assertions, it is their burden to do so. *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521–22 (5th Cir. 2002) ("A plaintiff asserting an implied right of action under a federal statute bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the statute. In other words, he must overcome the familiar presumption that Congress did not intend to create a private right of action."); (*see also* Doc. 63-2 at 3 (arguing that *Defendants* have "cited no evidence" that the Stafford Act was meant to *deny* a private remedy)). Moreover, the Court cannot locate language that would do so: instead, the Stafford Act is generally framed as a grant of authority to the President and those operating on his behalf. Its focus is not on those eligible for assistance, and is therefore not "phrased in terms of the persons benefitted" under the statute. *See Delancey*, 570 F.3d at 593. The Court also observes that, based on statements in *Davis* and related cases, district courts have

11

generally found that the Stafford Act contains no private right of action. *See, e.g.*, *Armstead v. Napolitano*, 2012 WL 686286, at *3 (E.D. La. Mar. 2, 2012) (Vance, J.); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 2186400, at *3 (E.D. La. May 27, 2008), *aff'd*, 351 F. App'x 938 (5th Cir. 2009). In light of the foregoing, the Court cannot conclude that the Stafford Act authorizes a private right of action.

Additionally, even assuming that a private right of action were available or that Plaintiffs' claims were brought pursuant to a statute that includes one, Plaintiffs would still need to overcome § 5148 of the Stafford Act. That provision states that "[t]he Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." 42 U.S.C. § 5148. As *Davis* discussed, § 5148 was designed to protect the Government from liability for its discretionary functions, and it applies to functions under the Stafford Act closely analogous to those at issue in this case. 556 F.3d at 318; *see also Freeman v. United States*, 556 F.3d 326, 337 (5th Cir. 2009) (applying discretionary function exception where plaintiffs argued that the government was negligent in the provision of food, water, shelter, medical assistance, and transportation to flood victims). That some of Plaintiffs' claims allege unacceptable delay in the decisionmaking process does not change this result. *See Martin Operating P'ship, L.P. v. United States*, 616 F. App'x 88, 695 (5th Cir. 2015) (in FTCA case, Coast Guard's delay in acting did not prevent application of discretionary function exception: the plaintiff did not cite any authority establishing a duty to act within a certain amount of time and, "[a]bsent a mandatory statutory or regulatory timeline for a decision," the Fifth Circuit "refuse[d] to entangle the courts in the Coast Guard's decisionmaking process by imposing one now"). Plaintiffs' argument concerning an exception for ultra vires

12

actions is also unavailing: Plaintiffs' argument to this effect relies on *Larson v. Domestic & Foreign Commerce Corp.*, which recognized a potential exception "where the officer's powers are limited by statute" and he acts "beyond those limitations" by "not doing the business which the sovereign has empowered him to do." 337 U.S. 682, 689 (1949). However, discretionary functions are, by their nature, matters committed to an official's "judgment or choice." *Davis,* 556 F.3d at 323. That is, this doctrine applies where an officer's actions are constrained by statute, not where he has the discretion to take one of several appropriate actions.

For the foregoing reasons, the Court lacks subject matter jurisdiction over Plaintiffs' claims under the Stafford Act. In an abundance of caution, the Court will grant leave to amend to allow Plaintiffs the opportunity to overcome these deficiencies (*e.g.*, by seeking relief under an as-yet-unidentified Stafford Act provision giving rise to a private right of action or more clearly alleging a non-discretionary function that Defendants have failed to perform).

### 2. Service and Personal Jurisdiction

Service of process is governed by Rule 4. Where the defendant is a United States agency, corporation, or officer sued in an official capacity, Rule 4(i)(2) requires a plaintiff to "serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee."

Service upon the United States is governed by Rule 4(i)(1), which states that a plaintiff must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Rule 4(m) requires a plaintiff to "properly serve defendant with a copy of the summons and complaint within 90 days after the complaint is filed." Rule 4(m) also provides that, if a defendant is not timely served, the court "must dismiss the action" or order that "service be made within a specified time." The rule further states that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." The Fifth Circuit has interpreted this to mean that, even if good cause for failure to serve does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service. *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir. 1996).

To establish good cause, a litigant must demonstrate "at least as much as would be required to show excusable neglect." *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir. 1985). "Actions falling into the category of inadvertence, mistake or ignorance of counsel are not excusable neglect and do not establish good cause for extending" the service period. *Traina v. United States,* 911 F.2d 1155, 1157 (5th Cir. 1990). Additionally, the claimant must make a showing of good faith and establish "'some reasonable basis for noncompliance within the time specified.'" *Winters,* 776 F.2d at 1306 (quoting 4A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1165, at 480 (2d ed. 1987)).

Rule 4(i)(4)(A) requires the Court to allow a party reasonable time to cure its failure to "serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States;" or "serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee."

14

In this case, proper service was required on the following individuals and entities: FEMA; John Kelly, the head of FEMA; the United States Attorney for the Middle District of Louisiana; and the Attorney General of the United States. It is not disputed that Plaintiffs in this case failed to fully effect proper service and have only served the United States Attorney for the Middle District of Louisiana. (Doc. 20 at 2). Therefore, the relevant question is whether the Court must, or may, grant Plaintiffs additional time to complete service.

The Court will grant Plaintiffs an extension of time to effect service. Plaintiffs argue, and the Court agrees, that Rule 4(i)(4)(A) requires an extension of time as to some, if not all, of the Defendants. Moreover, Plaintiffs had a large number of defendants to serve and made reasonable efforts to serve them in compliance with Rule 4. The service efforts described in this Ruling and Order, although inadequate, were apparently made in "good faith," and were not inadequate based simply on "inadvertence of plaintiffs' counsel." Defendants have also had notice of the suit since it was instituted. Several of the foregoing facts arguably demonstrate "good cause," and the circumstances as a whole justify an exercise of the Court's discretion to grant an extension absent good cause, particularly given the federal courts' strong preference for deciding cases on the merits. *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 686 (5th Cir. 1991); *see also Chaney v. Jones*, 2016 WL 6143062, at *3 (W.D. La. Oct. 19, 2016) (good cause not shown but extension nevertheless warranted where defendant "likely knew about this suit from its inception [and was] not prejudiced by the delayed service, and the plaintiff tried to serve [defendant] near the 120 day deadline.")). Therefore, the Court will grant an extension of time in which to serve Defendants.

### 3. Failure to State a Claim

Defendants seek dismissal of Plaintiffs' due process claims on the grounds that Plaintiffs lack a cognizable property interest in disaster assistance.[2] (Doc. 58-1 at 13-14). Although they disagree on its significance, the parties correctly recognize that *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008), addresses this issue. There, the Fifth Circuit stated:

> Plaintiffs have alleged that FEMA's administration of the rental assistance program violates the requirements of the Fifth Amendment's due process clause. To prevail on a due process claim, plaintiffs must show that: (1) they possess a property interest that is protected by the due process clause, and (2) FEMA's procedures are constitutionally inadequate. Although this case has not yet progressed to trial, in their initial pleadings and declarations the plaintiffs have described an overly bureaucratic and frustratingly unresponsive agency that misapplies its own rules and standards, uses incomprehensible codes to inform applicants of its decisions on their requests for assistance, and fails to offer any meaningful review of those decisions on administrative appeal. To support a preliminary injunction, however, they must establish a likelihood of success on the merits. FEMA argues that plaintiffs have not met this requirement because they have not shown that they can establish a property interest in rental assistance benefits.
>
> We agree that at this time plaintiffs have not made this required showing. Standing alone, the statute and regulations governing the rental assistance program are not sufficient to create a property interest. The possibility remains that plaintiffs can establish a property interest based on FEMA's policies and practices in implementing the statute and regulations to provide rental assistance. However, facts regarding these matters have not been sufficiently developed to allow us to decide this point. Therefore, we must vacate the challenged portions of the injunction and return this case to the district court for further development.

*Id.* at 734-35 (citations omitted).

Plaintiffs emphasize the portion of *Ridgely* allowing that "it is also possible for a legitimate claim of entitlement to arise" from FEMA's policies and practices, and they argue that they should be permitted to "prove a property interest under the *Ridgely* framework." (Doc. 63-2 at 5-6). Defendants contend that Plaintiffs have "pled no such circumstances that any of FEMA's policies

---

[2] Defendants also argue that Plaintiffs' claims under the Stafford Act's nondiscrimination provision are inadequately pled. (Doc. 58-1 at 14-15). The Court does not reach this issue, having decided *supra* that subject matter jurisdiction under the Stafford Act is lacking.

or practices make the award of a mobile home unit or 'FEMA trailer' mandatory." (Doc. 64 at 3-4).

The Court agrees with Defendants. Although Plaintiffs are not required to "prove" anything at this stage, they are required to allege sufficient facts to state a plausible claim for relief. *Thompson*, 764 F.3d at 503. Plaintiffs have not alleged any agency policies or practices that would plausibly give rise to a property interest necessary to support a due process claim. Indeed, the only "policies or practices" alleged in the Complaint are based on FEMA's claimed unresponsiveness and ineffectiveness, and are not practices that might plausibly give rise to a property interest.

Therefore, Plaintiffs due process claims are subject to dismissal. In the interest of permitting Plaintiffs to state a claim as contemplated in *Ridgely*, the dismissal is with leave to amend.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motions, (Docs. 13, 58), are **GRANTED**, and Plaintiffs' claims are dismissed. This dismissal is with leave to amend and an extension of time to effect service. The Court will set deadlines concerning leave to amend and effecting service following the disposition of all now outstanding motions.

Signed in Baton Rouge, Louisiana, on <u>March 28, 2018</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**