UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**PEOPLE'S WORKSHOP, INC., ET AL.**

**VERSUS**

**CIVIL ACTION**

**NO. 17-107-JWD-RLB**

**FEDERAL EMERGENCY**
**MANAGEMENT AGENCY, ET AL.**

## RULING AND ORDER

This matter comes before the Court on three motions: the Motion to Dismiss Amended Complaint on Behalf of the Town of Clinton, Lori Ann Bell, and Russ Hicks (Doc. 75); the Motion to Dismiss Pursuant to Rule 12(b)(6) on Behalf of the East Feliciana Parish Police Jury, Glen Kent, Chris Hall, Keith Mills, Dwight Hill, Sean Smith, Jody Moreau, and Jim Parker (Doc. 78); and the Federal Defendants' Motion to Dismiss (Doc. 85). The plaintiffs oppose the motions. (Docs. 91, 94 & 99). Two reply briefs have been filed. (Docs. 95 & 96). Oral argument is not necessary. After careful consideration of the parties' arguments, the facts in the record, and the applicable law, and for the following reasons, the motions to dismiss (Docs. 75, 78 & 85) are granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2017, Plaintiff People's Workshop, Inc., along with a number of individual residents of Clinton, Louisiana, filed suit against a host of federal, state, and local entities in connection with the provision of temporary housing in the wake of catastrophic flooding.

**A.  Relevant Facts**

In August 2016, parts of the state of Louisiana experienced historic flooding, leading the President to declare a state of emergency. (Doc. 72 at 13). People's Workshop, Inc., also referred to in the amended complaint as the Feliciana Housing Authority ("People's Workshop"), is a

nonprofit rural housing development corporation which advocates for affordable housing for the elderly, disabled, homeless, and low-income individuals. (*Id.* at 6). In the wake of the August 2016 flood, People's Workshop President George A. Turner allegedly obtained property in Clinton, Louisiana, "for the transitional shelter and a trailer park for the flood victims." (*Id.*). Turner and another People's Workshop employee then met with East Feliciana Parish Emergency Operations Center director Jody Moreau who "became irate, belligerent, and prejudiced towards the notion of the flood victims having a group trailer site in their own community," and "sent residents out of their community to other Parishes." (*Id.* at 6–7).

People's Workshop and the individual plaintiffs, who are all residents of Clinton, allege that, upon the declaration of emergency, the Federal Emergency Management Agency ("FEMA") was required to provide people whose homes were rendered uninhabitable or inaccessible with various forms of disaster assistance on a nondiscriminatory basis. (*Id.* at 14). Instead, the plaintiffs allege that FEMA and East Feliciana Parish officials either failed to provide FEMA trailers to flood victims or "caused a significant delay in flood victims receiving trailers." (*Id.* at 14). Some victims were provided trailers but were told that they had to relocate to another parish despite the fact that People's Workshop had allegedly secured a temporary housing site in Clinton. (*Id.*). According to the plaintiffs, Moreau and John Parker, deputy emergency manager of the East Feliciana Emergency Operations Center, "opted to dislocate the residents out of their communities to another Parish," and told certain individuals that no property for FEMA trailers was available despite "property being available to those residents." (*Id.* at 14–15). This has "resulted in many residents still being homeless and displaced when they could have been provided appropriate housing and assistance since at least September 2016." (*Id.* at 15).

Moreover, "obtaining trailer assistance from FEMA has been fraught with red tape and other bureaucratic impediments, and FEMA has been very slow to deliver the much-needed trailers." (Doc. 72 at 15). FEMA's local representatives "intentionally made improper assessments of the flood victims' homes, downgrading the damage done to the homes so that the victims could not receive proper assistance to salvage their homes." (*Id.*). Moreau, Parker, and Mayor Bell provided false information to Louisiana Governor John Bel Edwards "that the Town of Clinton did not need a groupsite [sic] in Clinton to place the trailers on and that all the victims had received FEMA assistance." (*Id.*). "Many flood victims in Clinton have been hampered because of the misguiled [sic] of the FEMA representatives, the East Feliciana Police Jury, and the Mayor of Clinton and were subjected to further aggravation and undue hardship." (*Id.* at 16).

According to the plaintiffs, the defendants' conduct "has caused and will continue to cause" irreparable injury in that "they will be wrongfully denied, delayed, and sent away from their community essential housing assistance that is necessary for the health and welfare of the applicants and their families." (Doc. 72 at 16). Accordingly, they are faced with the threat of homelessness and "have been forced to live in unsafe and unsanitary conditions which has caused medical complications." (*Id.*). The defendants' "continued failure and refusal to provide housing assistance to thousands of individuals and families is causing and will likely continue to cause, [sic] further destitution, homelessness, hunger, stress, and, as a consequence, increase the risk of illness and danger in their lives." (*Id.*).

The plaintiffs allege that "the Defendants have discriminated against all Plaintiffs and all persons similarly situated" by: (1) denying FEMA assistance to certain individuals who are disabled, (2) "[d]iscriminating against Plaintiffs by not providing FEMA trailers because Defendants did not want FEMA trailers in the victim's [sic] place of residence, Clinton,

Louisiana," and (3) employing a "policy, pattern, and practice of denying assistance and downgrading the value of African American homes compared to Caucasian residents/victims." (Doc. 72 at 18).

**B.     Parties**

In addition to People's Workshop, there are eight Clinton residents named as Plaintiffs. Dora O'Connor applied for but did not receive temporary housing from FEMA and "made two appeals . . . to no avail." (Doc. 72 at 7). Pamela R. Miller applied for but did not receive temporary housing from FEMA and was told that she needed to apply for a Small Business Administration ("SBA") loan. (*Id.*). She appealed the decision once. (*Id.*). Linda Keller's home was "uninhabitable" because of the flood and was "erroneously assessed with the damage to her home being downgraded by FEMA representative Jody Moreau and Russ Hicks." (*Id.*). Hazel Harrell,[1] whose home was uninhabitable, received temporary housing but was forced to relocate to another parish despite "property being available in Clinton, Louisiana to place the trailer which was ignored by FEMA representatives." (*Id.* at 8). Sheila Flowers' home was "rendered uninhabitable due to the flood." (*Id.*). The flood waters in her neighborhood were exacerbated by a new road built by the Town of Clinton (the "Town") which "closed up the drainage ditches in the neighborhood." (*Id.*). Eugene Matthews applied for but has not received temporary housing and "has been given the run around by FEMA every time he inquires about the status of a trailer," but has been informed that FEMA will not be placing any temporary housing in Clinton. (*Id.*). Beulah Bennet applied for temporary housing but was denied after being "informed she needed her own property to place [a FEMA trailer] on." (*Id.*). Finally, Walter E. Chapman applied for FEMA

---

[1] Harrell is referred to as "Hazel Wilson" on page 8 of the amended complaint, but elsewhere as Hazel Harrell. Accordingly, the Court assumes that the reference to "Hazel Wilson" is a typographical error.

temporary housing but "was denied because FEMA and local officials did not want trailers in Clinton, Louisiana." (*Id.* at 9).

Named as Defendants are FEMA, the U.S. Department of Homeland Security ("DHS"), and DHS Secretary Kirstjen Nielsen (the "Federal Defendants"); Lori Ann Bell, Mayor of the Town of Clinton, Russ Hicks, East Feliciana Parish and Town of Clinton Flood Plain Administrator, and the "Town Alderman" (the "Town Defendants"); and Moeau, Parker, the East Feliciana Parish Police Jury, and five individual Police Jury members: Glen Kent, Chris Hall, Keith Mills, Dwight Hill, and Sean Smith (together, the "Parish Defendants").

**C.     Claims**

The plaintiffs purport to bring four causes of action: (1) "Unlawful Discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1983"; (2) "Failure to Provide Temporary Housing Assistance – Due Process Violation"; (3) "Title VI of the Civil Rights Act of 1964"; and (4) "Title VI of the Civil Rights Act of 1964 and Due Process Violations." (Doc. 72 at 18–23). All claims against the individual defendants are brought in their official capacities. (Doc. 72 at 2). Despite being warned previously by the Court of their failure to "precisely delineate the scope of the claims against each Defendant," (Docs. 68 at 15 & 70 at 7), the plaintiffs have once again brought overlapping claims against "Defendants" without (1) specifying which cause of action is asserted against each named Defendant, and (2) clearly differentiating between the acts and omissions of each Defendant. Moreover, Title VI of the Civil Rights Act of 1964 is referenced in three of the four causes of action, while "due process violations" appears twice. This inartful method of pleading significantly complicates the Court's duty to precisely define the scope of each cause of action to determine which, if any, state a claim upon which relief can be granted.

The amended complaint also seeks declaratory and injunctive relief. Specifically, the plaintiffs ask the Court to issue an injunction preventing the East Feliciana Parish Police Jury from "setting up a private long-term Recovery Committee under the local Chamber of Commerce that does not include a representative from the local agencies and citizen(s) representative on the committee that represent an accurate depiction of the community residents affected by the flood." (Doc. 72 at 22). All told, the plaintiffs request the Court to:

> 1. Declare that the actions of Defendants described above constitutes discrimination on the basis of race in violation of 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, and the American Disabilities Act 42 U.S.C. § 12101.
>
> 2. Enter a preliminary injunction prohibiting Defendants from engaging in the illegal discriminatory conduct described herein, requiring all Defendants to take all steps necessary to remedy the effects of such conduct, and prevent similar occurrences in the future, and ordering FEMA to provide the person who submitted applications for Temporary Housing Assistance but have been subsequently denied Temporary Housing Assistance.
>
> 3. For a Preliminary and Permanent Injunction restraining DEFENDANTS from having a trailer groupsite outside of the Town of Clinton.
>
> 4. For a Preliminary and Permanent Injunction restraining the East Feliciana Police Jury from forming a Private Task Recovery Committee with public funds which does not include a representative from local agencies and residents of the community which represent a fair and adequate depiction of the Town of Clinton.
>
> 5. For a Preliminary and Permanent Injunction prohibiting the East Feliciana Chamber of Commerce from receiving and overseeing FEMA funds (resources);
>
> 6. FURTHER PRAY THAT FEMA will set up trailer sites in the Town of Clinton and utilize the property available and provided by Feliciana Housing Authority as a FEMA property groupsite;
>
> 7. Award Plaintiffs compensatory damages in an amount to be determined at Trial, to fully compensate them for injuries including, but not limited to, monetary loss, humiliation, embarrassment, emotional distress, the deprivation of statutory and constitutional rights, and other damages that they have suffered as a result of Defendants' actions described above;
>
> 8. Award Plaintiffs reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;
>
> 9. Award Plaintiffs prejudgment interests;
>
> 10. For Declaratory Relief;

> 11. For an order allowing this case to proceed as a class action;
>
> 12. For such other relief as this Court deem just and proper; and
>
> 13. Plaintiffs' demands [sic] a trial by jury on all issues so triable.

(*Id.* at 24–26).

## D. Procedural History

On March 28, 2018, the Court granted motions to dismiss by the Federal Defendants (Docs. 13 & 58) and the Parish Defendants (Doc. 15). (*See* Docs. 67 & 68). On April 20, 2018, the Court granted a motion for judgment on the pleadings filed by the Town Defendants. (*See* Doc. 70). All of the motions generally argued that the plaintiffs' original complaint, which brought claims under the Stafford Act, Title VI of the Civil Rights Act of 1964, and the Due Process Clause of the Fifth Amendment failed to state a claim upon which relief could be granted. The Court then directed the plaintiffs to file an amended complaint "remedying the defects described in the Court's prior orders." (Doc. 71). On May 22, 2018, the plaintiffs filed an amended complaint. (Doc. 72). The instant motions (Docs. 75, 78 & 85) followed.

Despite the fact that the plaintiffs purport to represent a class of similarly-situated individuals, (Doc. 72 at 9–11), they have not formally moved for class certification under Federal Rule of Civil Procedure 23.[2]

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

In ruling on a motion to dismiss under to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th

---
[2] In any event, because the Court grants the motions to dismiss and dispose of all claims, it will not reach the issue of class certification.

Cir. 2009). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient. *Iqbal*, 556 U.S. at 678.

**B.      Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) is analyzed similarly to a motion under Rule 12(b)(6), as the Court accepts "well-pled factual allegations . . . as true and view[s] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Under Rule 12(b)(1), the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The Court must dismiss the case if it determines it does not have subject matter jurisdiction, and the party asserting jurisdiction bears the burden of demonstrating its existence. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

## III. DISCUSSION

### A. Town Defendants (Doc. 75)

As already explained, the amended complaint asserts claims against the individual defendants in their official capacities. (*See* Doc. 72 at 2). It is well established that official-capacity claims are akin to claims against the governmental entity for which the individual defendants serve. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the plaintiffs' official-capacity due process claim under § 1983 against the Town and Parish Defendants must be analyzed as a claim against the Town of Clinton and East Feliciana Parish.

Municipalities can only be liable for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Thus, plaintiffs asserting § 1983 claims against local governments "must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). Accordingly, to state a plausible § 1983 claim against a municipality, a plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (internal quotation marks omitted). The Fifth Circuit defines an official policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing

body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g,* 739 F.2d 993 (5th Cir. 1984).

Even if the Court assumes that the plaintiffs have sufficiently alleged a constitutional violation, their conclusory allegation of a Town "policy, pattern and practice" that caused that violation is plainly insufficient to state a plausible § 1983 claim.[3] The only conceivable policy, pattern, or practice identified by the plaintiffs are the Town's failure to provide temporary housing assistance or the stray reference in the amended complaint to the "downgrading the value of African American homes compared to Caucasian residents/victims" by unspecified Defendants. (Doc. 72 at 18). But to allege a municipal liability claim based on an unconstitutional policy or custom, the plaintiffs must offer more. Instead, they must identify *specific* policies, patterns, or practices that were promulgated by an official policymaker that violated a constitutional right. Here, the plaintiffs' scant and conclusory allegations regarding an alleged policy, pattern, or practice leave the Court unable to determine whether there was an official policy or custom in the first place, who promulgated it, and how it led to a constitutional violation. Indeed, the amended complaint's formulaic allegations are precisely the kind of "labels and conclusions" and "recitation of the elements of a cause of action" the Supreme Court in *Iqbal* declared inadequate. *Iqbal*, 556

---

[3] Due in large part to the plaintiffs' inartful pleading, there is considerable confusion regarding which claims they have actually asserted. Contrary to what the plaintiffs appear to suggest, Section 1983 itself is not an independent cause of action and is instead a "vehicle" by which the plaintiffs can challenge the alleged violation of federal statutory or constitutional rights. *See, e.g.*, *Garrett v. City of Houston, Tex.*, 102 F. App'x 863, 864 (5th Cir. 2004). Based on the Court's reading of the amended complaint, the plaintiffs have brought claims under Title VI of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Due Process Clause of the Fifth Amendment, which the Court construes as a § 1983 claim under the Fourteenth Amendment's Due Process Clause as applied to the Town and Parish Defendants.

U.S. at 678. Accordingly, the § 1983 due process claim asserted against the Town Defendants in their official capacities fails to state a claim upon which relief can be granted.[4]

In their response brief, the plaintiffs argue that under the Stafford Act, 42 U.S.C. § 5151, the Town Defendants had a duty to provide disaster assistance in a nondiscriminatory manner. (Doc. 91 at 7–9). But their argument, supported by no legal authority other than the Stafford Act itself, misses the mark. Assuming the Town Defendants had a duty to provide disaster assistance to the plaintiffs in a nondiscriminatory manner, the plaintiffs have pleaded no actual *facts* demonstrating that the Town itself had any policy or practice which caused the discriminatory provision of disaster assistance and violated the plaintiffs' rights under the Fourteenth Amendment's Due Process Clause.

Moreover, the amended complaint alleges no facts which could support a cognizable claim under Title VI to the Civil Right Act of 1964 ("Title VI") or the Americans with Disabilities Act ("ADA"). Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI requires "that a litigant plead facts in support of intentional discrimination." *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009). Here, the amended complaint alleges only that unspecified "Defendants have a policy, pattern, and practice of denying assistance and downgrading the value of African American homes compared to Caucasian residents/victims." (Doc. 72 at 18). But the plaintiffs have not alleged nor explained how the Town

---

[4] The Court need not engage in an extensive discussion of the plaintiffs' claims under the Due Process Clause because any such claim is brought pursuant to § 1983 and must satisfy the prerequisites for municipal liability. Nevertheless, the Court concludes, as it has previously ruled, that "the Stafford Act and its associated regulations alone do not give rise to a property interest for due process purposes, and Plaintiffs have not alleged policies or procedures that would support a plausible due process claim." (Doc. 70 at 7).

Defendants had any role in the provision of FEMA assistance or assessment of the value of homes in Clinton. Nor have they alleged that any such discriminatory appraisal, which is unexplained and not referenced anywhere else in the amended complaint, was intentionally discriminatory. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (holding that Title VI "prohibits only intentional discrimination").

Additionally, the plaintiffs' failure to specify which conduct is attributable to each defendant (in addition to the failure to specify which cause of action is asserted against each defendant) offers no clarity on this issue (in addition to many others). Such failure is a clear violation of the pleading requirements set out in Rules 8 and 10 of the Federal Rules of Civil Procedure. *See, e.g.*, *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (stating that allegations featuring "blanket terms covering all the defendants, by lumping them together" can be "properly disregarded" unless it can be "clearly inferred" that the allegation is asserted against a particular defendant); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (deriding the "relatively rare [pleading] sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against"). This, of course, directly contradicts the Court's prior instruction to "precisely delineate the scope of the claims against each Defendant." (Docs. 68 at 15 & 70 at 7).

The amended complaint also alleges in conclusory fashion that "Defendants" have denied housing assistance benefits to disabled individuals in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. (*See* Doc. 72 at 3, 18 & 19). To state a *prima facie* case of disability discrimination under the ADA, a plaintiff must allege that: (1) he is a qualified individual within the meaning of the ADA; (2) he was excluded from participation in, or denied the benefits

of, services, programs or activities for which the defendant is responsible; and (3) that such exclusion or discrimination was a result of his disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). As best as the Court can ascertain, the plaintiffs' ADA claim is based entirely on the assertion that certain unnamed individuals denied temporary housing assistance were disabled. Such a barebones allegation, without any explanation regarding which plaintiffs were disabled, the purported disabilities they suffered, or how the denial of temporary housing assistance resulted from their disability is patently insufficient to state a viable claim of disability discrimination under the ADA.[5] Accordingly, the Town Defendants' motion (Doc. 75) is granted, and all claims against the Town Defendants are dismissed with prejudice.

**B.     Parish Defendants (Doc. 78)**

The Parish Defendants divide the claims against them into three general categories: (1) claims by Plaintiffs who claim they were denied FEMA temporary housing or that the FEMA temporary housing program was improperly administered; (2) claims by Plaintiffs who sought to establish a temporary housing site in Clinton; and (3) the requested injunction to prevent the East Feliciana Parish Police Jury from establishing a "long-term Recovery Committee." (Doc. 78-1 at 2–3).

The plaintiffs have alleged, in essence, that the Parish Defendants negligently "bungled their FEMA assignments" by: (1) not providing temporary housing; (2) causing a delay in the provision of temporary housing; and (3) causing those who received temporary housing to relocate to another parish despite the fact that People's Workshop had allegedly secured a site for temporary housing in Clinton. These allegations, even if true, cannot support a plausible claim under either Title VI or the Fourteenth Amendment's Due Process Clause.

---

[5] The same analysis applies to the plaintiffs' purported ADA claim asserted against any of the defendants. Accordingly, any claim under the ADA is dismissed with prejudice.

To subject the Parish to liability for the conduct of Moreau, Parker, or any of the members of the Police Jury (whose conduct is not discussed in the amended complaint), the plaintiffs "must plead facts that plausibly support each element of § 1983 municipal liability" under their theory of the Parish's alleged policy, pattern, or practice of denying temporary housing assistance to the residents. *Pena v. City of Rio Grande City*, 679 F.3d 613, 622 (5th Cir. 2018). The plaintiffs have fallen far short of meeting this burden.

Here, as with any municipal liability claim against the Town Defendants, the plaintiffs have failed to plead specific facts plausibly supporting each element of municipal liability against the Parish. In addition to the stray reference to race discrimination, *see infra* Section III.A., which is not directed toward any specific Defendant, the allegations directed toward the Parish consist of Moreau and Parker's purported "bungling" of the provision of temporary housing by either "not providing FEMA trailers to flood victims and/or caus[ing] a significant delay in flood victims receiving trailers." (Doc. 72 at 14). Specifically, they alleged that Moreau "became irate, belligerent, and prejudiced toward the notion of the flood victims having a group trailer site" in Clinton, and that she and Hicks "erroneously assessed" and "downgraded" the damage to Linda Keller's home. (Doc. 72 at 7). They also claim that Moreau and Parker "did not properly inform the residents of their options and many remain in deplorable conditions or had to move out of the Parish." (*Id.* at 15). Finally, Moreau and Parker erroneously informed the Governor of Louisiana that Clinton "did not need a groupsite [sic] to place the trailers on and that all of the victims had received FEMA assistance." (*Id.*). But such allegations, in addition to being woefully insufficient to satisfy the elements of § 1983 municipal liability, allege nothing more than mere negligence on the part of Parish officials, and "a showing of simple or even heightened negligence will not suffice" to subject a municipality to § 1983 liability. *Piotrowski v. City of Hous.*, 237 F.3d 567,

14

579 (5th Cir. 2001). Thus, the plaintiffs have failed to state a plausible § 1983 claim against the Parish Defendants.[6]

C.  **Federal Defendants (Doc. 85)**

The Federal Defendants move to dismiss the claims against them on the basis of sovereign immunity and, in the alternative, for failure to state a claim. (*See* Doc. 85-1). In response, the plaintiffs state that the Federal Defendants' sovereign immunity argument "proceeds upon a misreading of Plaintiffs' amended complaint," as "[i]t is clear that the substantive claims brought in the amended complaint, to the extent damages are requested, are directed to the state actors."[7] (Doc. 99-2 at 2). As an initial matter, the Court disagrees with the plaintiffs' characterization of their amended complaint as "clear," and notes that, to the extent the Federal Defendants have "misread" the amended complaint, such misreading is the result of the lack of clarity and opaqueness apparent throughout the amended complaint. As the Court has already stated, it specifically directed the plaintiffs on multiple prior occasions to "precisely delineate the scope of the claims against each Defendant," and they have failed to do so. It is because of such failure—and not any other party's "misreading" of the complaint—that significant confusion exists regarding (among other things) which claims the plaintiffs intended to assert against which defendants.

Nevertheless, the plaintiffs have clarified in briefing that they are seeking "only prospective injunctive relief" against the Federal Defendants, which they argue is excepted from the doctrine

---

[6] The Court denies without prejudice the Parish Defendants' request for attorney's fees under 42 U.S.C. § 1988. (*See* Doc. 78-1 at 10–11). To the extent the Parish Defendants seek an award of attorney's fees, they may do so by filing a separate motion with the requisite legal and factual support included.

[7] Indeed, Plaintiffs claim that such "misreading" is due to the fact that when they refer in the amended complaint to "FEMA," they are not actually referring to FEMA, but also to "the state actors who implement the emergency assistance." (Doc. 99-2 at 2). This is despite the fact that the amended complaint defines "FEMA" as the "Federal Emergency Management Agency," which is "the federal agency designated by the President to administer the Temporary Housing Assistance program in accordance with the provisions of federal regulations." (Doc. 72 at 11).

15

of sovereign immunity. (Doc. 99-2 at 2). But this argument fails to address the issue of the United States' immunity.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Because sovereign immunity is jurisdictional in nature, Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 316 (5th Cir. 2009) (citations and internal quotation marks omitted). It is the plaintiffs' burden to demonstrate "Congress's unequivocal waiver of sovereign immunity." *Id.* at 315.

The plaintiffs have failed to meet their burden to demonstrate a waiver to sovereign immunity. They have not brought suit under any federal statute providing an express waiver of sovereign immunity. Under the Stafford Act, repeatedly relied upon by the plaintiffs in briefing to demonstrate the Town and Parish Defendants' duty to provide disaster relief in a nondiscriminatory manner, the United States is protected "from liability for claims based on its discretionary conduct."[8] *St. Tammany Parish*, 556 F.3d at 318. Specifically, the Stafford Act provides that the United States shall not be liable for "any claim based on the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government." 42 U.S.C. § 5148. Thus, "this prevision precludes judicial review of all disaster relief claims based upon the discretionary actions of federal employees." *St. Tammany Parish*, 556 F.3d at 318 (internal quotation marks omitted).

---

[8] Even though the Stafford Act contains no express waiver of sovereign immunity, the discretionary function exception exists "to protect the government from liability for claims based on its discretionary conduct brought pursuant to the [Federal Tort Claims Act, Administrative Procedure Act,] or other statutes of general applicability." *St. Tammany Parish*, 556 F.3d at 318. In *St. Tammany Parish*, the Fifth Circuit held that the discretionary function exception found in the Stafford Act should be analyzed identically to the Federal Tort Claims Act's discretionary function exception. *Id.* at 319.

The discretionary function exception is subject to a two-part test. *Id.* at 323. First, the conduct complained of "must be a 'matter of choice for the acting employee.'" *Id.* (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The discretionary function exception "covers only acts that are discretionary in nature, acts that involve an element of judgment or choice, and it is the nature of the conduct, rather than the status of the actor that governs whether the exception applies." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citations and internal quotation marks omitted). "If a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *St. Tammany Parish*, 556 F.3d at 323.

Second, "even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (internal quotation marks omitted). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy . . ., when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323 (citations and internal quotation marks omitted).

Here, there is no doubt that, even if the plaintiffs could claim a right to relief under the Stafford Act, the discretionary function exception does not block the United States' immunity from suit. "[T]he Stafford Act, its regulations, and related agency guidance do not give rise to a mandatory duty," and "instead permit discretionary, policy-oriented choices that cannot be the basis for the court's subject matter jurisdiction." *St. Tammany Parish*, 556 F.3d at 325–26. Indeed, "decisions involving the allocation and deployment of limited governmental resources are the type

17

of administrative judgment that the discretionary function exception was designed to immunize from suit." *Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998). Thus, the decisions complained of by the plaintiffs here, which include the denial of temporary housing assistance and the decision to locate temporary housing outside of Clinton and in another parish, fall squarely within the Stafford Act's discretionary function exception even to the extent a statutory waiver of sovereign immunity existed and applied to the case at hand, which has not been shown.

Thus, because the Stafford Act's discretionary function exception applies, and because the plaintiffs have pointed to no other specific statutory waiver of the United States' sovereign immunity that would salvage their claims in this case, the Federal Defendants are immune from suit and their motion to dismiss under Rule 12(b)(1) is granted.

**D.     Injunctive Relief**

Because the Court dismisses the claims against the Town and Parish Defendants for failure to state a claim, it denies the plaintiffs' request for various forms of injunctive and declaratory relief for the same reasons. Even to the extent any of the plaintiffs' claims were plausible on their merits, they have failed to provide the Court with any legal authority whatsoever for the injunctive and declaratory relief they seek, including their requests to prevent East Feliciana Parish from establishing a "long-term Recovery Committee," and to prohibit the East Feliciana Chamber of Commerce, which is not a party to this lawsuit, from "receiving and overseeing FEMA funds." (Doc. 72 at 25). Accordingly, the Court denies the plaintiffs' requested injunctive and declaratory relief.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the motions to dismiss (Docs. 75, 78 & 85) are **GRANTED**, and all claims asserted by Plaintiffs in this lawsuit are **DISMISSED WITH PREJUDICE**, with the exception of the claims against the Federal

Defendants, which are **DISMISSED WITHOUT PREJUDICE**.[9]  The Court will issue a final judgment separately.

Signed in Baton Rouge, Louisiana, on March 12, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[9] "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).